UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ERIC DUCHAMP,

|  |  |
|---|---|
| *Plaintiff*, | **Case No.: 20-cv-10680** |
| -against- | **COMPLAINT** |
| WPP GROUP USA, INC., | PLAINTIFF DEMANDS<br>A TRIAL BY JURY |
| *Defendant*. | |

-----------------------------------------------------------------x

Plaintiff, Eric Duchamp, by and through his attorneys, McLaughlin & Stern, LLP, complains of Defendant WPP Group USA, Inc. as follows:

## PARTIES

1.      Plaintiff, Eric Duchamp ("Plaintiff" or "Duchamp") is an individual residing at 6 Rue Saint-Marc, in Paris, France.

2.      Defendant WPP Group USA, Inc. ("WPP Group" or "Defendant") is a Delaware Corporation with its principal place of business at 175 Greenwich Street, 31st Floor, New York, New York 10007.

## NATURE OF THE ACTION

3.      This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e, *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law, § 290, *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code. § 8-101, *et seq.*; and the Age Discrimination in Employment Act, *see* 29 U.S.C. § 621 *et seq.* (the "ADEA").

## JURISDICTION AND VENUE

4.      Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.     Plaintiff filed a Verified Complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on June 11, 2019 and was assigned Charge Number 520-2019-04034. The EEOC issued a Dismissal and Notice of Rights on September 25, 2020.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claim occurred in the Southern District of New York.

### STATEMENT OF MATERIAL FACTS

WPP Group as Duchamp's Employer

7.     At all relevant times, Duchamp was the Global CEO of PeclersParis S.A. ("Peclers"), a subsidiary of WPP plc.[1,2] In that capacity, Duchamp was directly accountable to James Prior ("Prior"). Prior was Global CEO of SuperUnion and was directly accountable to the CEO of WPP plc.

8.     As Global CEO of Peclers, Duchamp's duties extended to the oversight of PeclersParis North America, Inc. ("PPNA"), a subsidiary of WPP Group. Duchamp's role as Global CEO of Peclers rendered him accountable for the financial performance of PPNA—to wit, approximately twenty percent of Pecler's total revenue was derived from PPNA's United States-based activities alone; and Duchamp's personal bonus compensation was tied to the financial performance of Peclers as a whole, including to a significant measure the financial performance of the North American subsidiary, PPNA.

---

[1]     WPP plc is a corporation registered in the United Kingdom. WPP Group USA, Inc. is the United States subsidiary of WPP plc. WPP plc owns Peclers through WPP France S.A., a wholly-owned subsidiary of WPP plc and Peclers's sole shareholder.

[2]     At the time of Duchamp's hiring, Peclers was a subsidiary of Fitch Worldwide Studio Network, a subsidiary of WPP plc. PPNA became a subsidiary of SuperUnion following a corporate restructuring by WPP plc.

9.      As Global CEO of Peclers, Duchamp routinely worked out of PPNA's New York offices—at which offices he had a permanent desk and a direct phone line—and oversaw the performance of PPNA employees, made hiring and firing decisions with respect to PPNA employees, met with PPNA clients, and signed binding contracts on behalf of PPNA.[3] Duchamp achieved record-high revenue and profit during several years of his tenure as Global CEO of Peclers and significantly expanded Pecler's business globally, including in the United States, tripling Pecler's revenue between 2009 and 2018.

10.      Donald Forringer ("Forringer") is the Chief Financial Officer of Brand Union USA, now a subsidiary of Super Union. Forringer also served as the *de facto* human resources manager for Duchamp's team at PPNA.

11.      WPP Group, WPP plc, WPP France, S.A., SuperUnion, Brand Union USA, Peclers, and PPNA (collectively, the "Companies") should be treated as a single joint employer—the Companies share operations without distinction (for example, Duchamp, on behalf of Peclers, routinely executes contracts on behalf of PPNA, despite that the former is ostensibly owned by WPP France, S.A. and the latter by WPP Group through SuperUnion); Martin Sorrell or Mark Read, each of whom was the CEO of WPP plc over the course of Duchamp's tenure, along with Prior, control all aspects of the Companies' labor relations and management (for example, each was involved in the termination by Forringer of one of Duchamp's employees, a mere Managing Director at PPNA, and each was involved in setting financial goals and the structure of Peclers and PPNA); and ownership of WPP Group, Peclers, SuperUnion, WPP France, S.A., Brand Union USA, and PPNA can all ultimately be traced to WPP plc.

---

[3]      Duchamp undertook these activities on behalf of PPNA in his capacity as Global CEO of Peclers.

12.     The complex subsidiary structure exists as a mere legal fiction. Irrespective of the individual company with which Duchamp signed his employment contract, WPP plc, as the corporate parent of each of its subsidiaries, should be treated as Duchamp's single employer.

Retaliation, Age and Race/National Origin Discrimination Against Duchamp

13.     In or around April 2017, WPP Group, acting through Forringer, discharged one of Duchamp's employees, Jeanine Milillo ("Milillo"), a Managing Director in PPNA's New York office. WPP Group compelled Milillo to tender her resignation to Duchamp after she became involved in a conflict with another PPNA employee who lodged a baseless complaint against her.[4] A male employee, another WPP Group CEO, had been the subject of similar complaints; WPP Group and WPP plc provided defense for that employee before he was ultimately transferred to another company within WPP plc, but Milillo was not afforded a similar defense or opportunity.

14.     Forringer willfully mishandled and inflamed the complaints against Milillo and her later termination. For instance, Forringer immediately escalated the controversy between Milillo and Duchamp's PPNA employee to Firouzeh Bahrampour, WPP Group's Chief Attorney Officer, without first attempting to resolve the controversy amicably.

15.     Believing the disparate treatment by WPP Group directed to his Managing Director to be based on her sex, Duchamp elevated concerns of WPP Group's discriminatory misconduct to Prior and WPP Group's Human Resources personnel. Prior, in turn, "escalated [the] issue to Martin Sorrell directly," who, at the time, was CEO of WPP plc.

16.     Duchamp spoke via telephone on Sunday, April 30, 2017, with Simon Bolton ("Bolton"), Executive Chairman of SuperUnion, in connection with his opposition to the

---

[4]     The complaining PPNA employee, Vegas Toliver, has demonstrated a pattern of unprofessional conduct at PPNA and has lodged baseless complaints against multiple PPNA employees. Duchamp and WPP Group investigated the complaint lodged against Milillo and found no basis for Vegas Toliver's allegations against her.

discrimination against Milillo; on that call, Bolton instructed Duchamp to "back off and avoid any personal problems with WPP." Thereafter, Sorrell became personally involved in the decision to finalize Milillo's termination in or about July 2017 following a three-month suspension.

17.     WPP plc and its subsidiaries are a notorious "British boys' club." Across dozens of subsidiary companies, WPP plc and WPP Group installed a vast array of Global CEOs amongst whom Duchamp was the only French national. Because Duchamp did not fit the mold of other Global CEOs, WPP Group and WPP plc acted to retaliate against—and ultimately terminated—him as a result of his having opposed discrimination against Milillo.

18.     In or about July 2017, Duchamp was advised that his scheduled pay raise—earned as a result of his having achieved record revenue and profits—would be cancelled. Moreover, WPP plc and WPP Group changed the manner in which they assessed costs incurred by PPNA, specifically by making retroactive adjustments to Duchamp's statement of profit and loss, in an effort to force Duchamp to fail to reach the performance goals to which his compensation was tied. Moreover, WPP and WPP Group stripped Duchamp of his managerial autonomy by installing a new Chief Financial Officer at Peclers without Duchamp's approval; and by declining to approve Duchamp's expenses.

19.     Prior and Sorrell continued to act deliberately to reduce Duchamp's compensation when they refused to allow him to alter the composition of Peclers and PPNA in order to eliminate loss centers. This action constituted an effective demotion, whereby Duchamp was stripped of his managerial authority.

20.     Vegas Toliver once again launched baseless complaints against PPNA employees in 2018, then with respect to Milillo's replacement, Fiola Atzler. WPP Group declined to defend her or provide her with an opportunity to transfer. Instead, Fiona Atzler went on extended leave.

Duchamp vocally opposed WPP Group's conduct, observing their continued failure to afford female employees the same protections historically offered to male employees.

21.     When Duchamp again opposed WPP Group's discrimination against Milillo's replacement at PPNA in 2018, Prior and Mark Read ("Read"), WPP plc's new CEO, terminated Duchamp after questioning his "loyalty" to the company and under the pretextual guise of the financial predicament they had themselves orchestrated, including by having terminated Milillo. Ultimately, Duchamp was replaced by an employee ten years his junior.

## AS AND FOR A FIRST CAUSE OF ACTION: AGE DISCRIMINATION ARISING UNDER THE ADEA

22.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21 inclusive, with the same force and effect as though more fully set forth at length herein.

23.     At all relevant times, Plaintiff was an "employee" under the ADEA, 29 U.S.C. § 630(f).

24.     Defendant is an "employer" under the ADEA, 29 U.S.C. § 630(b).

25.     By the actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of his age in violation of the ADEA.

26.     Specifically, Plaintiff was terminated on the basis of his age and was replaced by an employee ten years his junior.

27.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION: AGE DISCRIMINATION ARISING UNDER NEW YORK STATE HUMAN RIGHTS LAW

28.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 inclusive, with the same force and effect as though more fully set forth at length herein.

29.     At all relevant times, Plaintiff was an "employee" for purposes of § 296 of the New York State Human Rights Law.

30.     Defendant is an "employer" for purposes of § 296 of the New York State Human Rights Law.

31.     By the actions detailed above, Defendant has unlawfully discriminated against and harassed Plaintiff on the basis of his age in violation of the New York State Human Rights Law.

32.     Specifically, Plaintiff was terminated on the basis of his age and was replaced by an employee ten years his junior.

33.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION: AGE DISCRIMINATION ARISING UNDER NEW YORK CITY HUMAN RIGHTS LAW

34.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 inclusive, with the same force and effect as though more fully set forth at length herein.

35.     Plaintiff is a "person" under § 8-102 of the New York City Human Rights Law.

36.     Defendant is an "employer" for purposes of the New York City Human Rights Law, under New York City Admin. Code § 8-102(5).

37.     By the actions detailed above, Defendant has unlawfully discriminated against and harassed Plaintiff on the basis of his age in violation of the New York City Human Rights Law.

38.     Specifically, Plaintiff was terminated on the basis of his age and was replaced by an employee ten years his junior.

39.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

40.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

### AS AND FOR A FOURTH CAUSE OF ACTION: RACE/NATIONAL ORIGIN DISCRIMINATION ARISING UNDER TITLE VII

41.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 inclusive, with the same force and effect as though more fully set forth at length herein.

42.     At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000-e(f).

43.     Defendant is an "employer" under Title VII, 42 U.S.C. § 2000-e(b).

44.     By the actions detailed above, Defendant has unlawfully discriminated against and harassed Plaintiff on the basis of his race and national origin in violation of Title VII.

45.     Specifically, Plaintiff was subjected to harassment, termination, and other improper conduct on the sole basis that he is French.

46.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

47.     Upon information and belief, Defendant's discriminatory actions were taken with reckless indifference to Plaintiff's rights. Plaintiff is therefore entitled to punitive damages under Title VII.

**AS AND FOR A FIFTH CAUSE OF ACTION: RACE/NATIONAL ORIGIN DISCRIMINATION ARISING UNDER NEW YORK STATE HUMAN RIGHTS LAW**

48.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 inclusive, with the same force and effect as though more fully set forth at length herein.

49.     At all relevant times, Plaintiff was an "employee" for purposes of § 296 of the New York State Human Rights Law.

50.     Defendant is an "employer" for purposes of § 296 of the New York State Human Rights Law.

51.     By the actions detailed above, Defendant has unlawfully discriminated against and harassed Plaintiff on the basis of his race and national origin in violation of the New York State Human Rights Law.

52.     Specifically, Plaintiff was subjected to harassment, termination, and other improper conduct on the sole basis that he is French.

53.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION: RACE/NATIONAL ORIGIN DISCRIMINATION ARISING UNDER NEW YORK CITY HUMAN RIGHTS LAW**

54.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 inclusive, with the same force and effect as though more fully set forth at length herein.

55.     Plaintiff is a "person" under § 8-102 of the New York City Human Rights Law.

56.     Defendant is an "employer" for purposes of the New York City Human Rights Law, under New York City Admin. Code § 8-102(5).

57.     By the actions detailed above, Defendant has unlawfully discriminated against and harassed Plaintiff on the basis of his race and national origin in violation of the New York City Human Rights Law.

58.     Specifically, Plaintiff was subjected to harassment, termination, and other improper conduct on the sole basis that he is French.

59.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

60.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

## AS AND FOR A SEVENTH CAUSE OF ACTION: RETALIATION ARISING UNDER TITLE VII

61.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 inclusive, with the same force and effect as though more fully set forth at length herein.

62.     At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000-e(f).

63.     Defendant is an "employer" under Title VII, 42 U.S.C. § 2000-e(b).

64.     By the actions detailed above, Defendant has unlawfully retaliated against Plaintiff for his complaints and objections made known to Defendant in violation of Title VII.

65.     Specifically, Defendant denied Plaintiff a scheduled pay raise and ultimately terminated Plaintiff, because he raised objections to Defendant's improper and discriminatory termination of Milillo.

66.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

67.     Upon information and belief, Defendant's discriminatory actions were taken with reckless indifference to Plaintiff's rights. Plaintiff is therefore entitled to punitive damages under Title VII.

### AS AND FOR A EIGHTH CAUSE OF ACTION: RETALIATION ARISING UNDER NEW YORK STATE HUMAN RIGHTS LAW

68.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67 inclusive, with the same force and effect as though more fully set forth at length herein.

69.     At all relevant times, Plaintiff was an "employee" for purposes of § 296 of the New York State Human Rights Law.

70.     Defendant is an "employer" for purposes of § 296 of the New York State Human Rights Law.

71.     By the actions detailed above, Defendant has unlawfully retaliated against Plaintiff for his complaints made known to Defendants in violation of the New York State Human Rights Law.

72.     Specifically, Defendant denied Plaintiff a scheduled pay raise and ultimately terminated Plaintiff, because he raised objections to Defendant's improper and discriminatory termination of Milillo.

73.     As a direct result of Defendants' discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION: RETALIATION
## ARISING UNDER NEW YORK CITY HUMAN RIGHTS LAW

74.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 73 inclusive, with the same force and effect as though more fully set forth at length herein.

75.     Plaintiff is a "person" under § 8-102 of the New York City Human Rights Law.

76.     Defendant is an "employer" for purposes of the New York City Human Rights Law, under New York City Admin. Code § 8-102(5).

77.     By the actions detailed above, Defendant has unlawfully retaliated against Plaintiff for his complaints made known to Defendants in violation of the New York City Human Rights Law.

78.     Specifically, Defendant denied Plaintiff a scheduled pay raise and ultimately terminated Plaintiff, because he raised objections to Defendant's improper and discriminatory termination of Milillo.

79.     As a direct result of Defendant's discriminatory actions, Plaintiff has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

80.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under the New York City Human Rights Law.

## JURY DEMAND

81.     Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands a judgment against Defendant as follows:

A. On his First Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and liquidated damages to the maximum extent allowable by law, attorneys' fees, interests, and costs;

B. On his Second Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, interests, and costs;

C. On his Third Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and punitive damages to the maximum extend allowable by law, attorneys' fees, interests, and costs;

D. On his Fourth Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and liquidated damages to the maximum extent allowable by law, attorneys' fees, interests, and costs;

E. On his Fifth Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, interests, and costs;

F. On his Sixth Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and punitive damages to the maximum extend allowable by law, attorneys' fees, interests, and costs;

G. On his Seventh Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and liquidated damages to the maximum extent allowable by law, attorneys' fees, interests, and costs;

H. On his Eighth Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, interests, and costs;

I.   On his Ninth Cause of Action, back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and punitive damages to the maximum extend allowable by law, attorneys' fees, interests, and costs;

J.   Such other and further relief as the Court deems appropriate under the circumstances.


Dated: New York, N.Y.
       December 18, 2020

                                        Respectfully Submitted,

                                        MCLAUGHLIN & STERN, LLP


                                        By:   _____
                                              Brett R. Gallaway, Esq.
                                              *Attorneys for Plaintiff*
                                              260 Madison Avenue
                                              New York, NY 10016
                                              (212) 448-1100
                                              bgallaway@mclaughlinstern.com